NEW ORLEANS, JANUARY, 1900.                    465

Tax Payers of Webster Parish vs. Police Jury et al.
did not believe the evidence was "newly" discovered—the indictment having been returned at a previous term of the court months before. The evidence itself appears, intrinsically, considering the intimacy of the witnesses with the parties accused of the theft, to bear out this disbelief of the Judge.

## No. 13,018.

## TAX PAYERS OF WEBSTER PARISH VS. POLICE JURY ET AL.

## SYLLABUS.

1. An action contesting an election held to determine whether a subscription shall be made to a railway is not prescribed in three months from the date of the promulgation of the election, and the prescription does not apply independently of the election so as to cure any illegality in the petition to the Police Jury for an election, although the action, as relates to the election itself, is not prescribed.

2. The right of contest, under Act 106 of 1892, gives the right to examine into the acts of the Police Jury in ordering the election. The contest sanctioned by the statute, is not limited to inquiring into the mere contesting of the votes at the election.

3. Plaintiffs are not all estopped from calling in question the action of the Police Jury in ordering the election. A number of the plaintiffs did not participate or acquiesce in the election proceedings.

4. Voting at the election would not give grounds to sustain the plea of estoppel.

5. Despite the benefits to the community a railroad makes sure, a taxpayer is given the right to contest the election.

6. Article 242 of the Constitution of 1879, relating to railways and public improvements, was not self-acting.

7. Act 135 of 1886 gave it effect, and carried out the intention of the framers of the Constitution.

8. This statute is conditional, and its taking effect is made to depend upon a petition of one-third of the taxpayers of the parish. Without a petition signed by one-third of the taxpayers requesting the Police Jury to call an election, the Police Jury has no power to call an election, and submit the question of taxation to a vote.

It is jurisdictional.

A PPEAL from the Second Judicial District, Parish of Webster. *Watkins, J.*

*Dormon & Reynolds* and *J. W. Holbert* for Plaintiffs, Appellees.

*L. K. Watkins* and *Stewart & Stewart* for Defendants, Appellants.

The opinion of the court was delivered by

BREAUX, J. Plaintiffs sued to set aside an election at which the question of levying a five mills tax for ten years in aid of a railroad was submitted to a vote of electors having the right to vote.

The first ground is that the railroad had not been legally incorporated at the time the petition calling for the election was signed, and at the time the election was called.

The facts, as related to this point, are that the charter of the railroad was recorded on October 28th, 1897. Afterward, the Police Jury passed the ordinance calling the election.

The ordinance and the charter were published at the same time, and simultaneously became operative, as relates to publication. On the day of the election, the charter had been published the required number of days.

The second ground of plaintiffs' attack is, that the petition for the election was not signed by one-third of the property taxpayers of the parish. Plaintiffs, in support of the attack made on the ground just stated, aver that not over five hundred and fifty names were signed to the petition, the number of resident taxpayers being two thousand two hundred and twelve and non-residents two hundred and seventeen; that, according to those figures, eight hundred and nine was the least number required for ordering the election.

The defendants, as relates to facts, claim that the result of the election was declared in favor of levying the tax by a majority of one hundred and twenty-four in numbers, and one hundred and seventy-seven thousand two hundred and thirty-eight dollars in amounts.

Experts, appointed by the court to examine the petition and report the names of the voters, returned, as part of their examination, that one hundred and twenty-eight names of persons who were not tax-payers appeared on the petition; that the names of forty-two taxpayers appeared on the petition twice; that there are twelve estates, twenty-four

partnerships, six corporations and two tutorships, whose names are on the petition.

The following is a tabulated statement, which plaintiffs claim is correct:

Number of resident taxpayers ...............................2297
Non-resident ............................................... 227
                                                            ——
    Total ...................................................2524

One-third ............................................... 841
Number on the petition..................................... 656
Deduct number found by experts as having no property.... 134
Dual signatures ....................................... 42
Partnerships on petition .............................. 24
Tutorships ............................................ 2
Corporations .......................................... 6
Signed by unauthorized agents.......................... 27
Property owners who did not sign the petition  whose names
    appear on the petition ............................. 89
Names on the petition above the 134 who did not sign, or who
    signed  but had no authority ....................... 11
                                                        ——
    Total .............................................. 335

Considerably less than required. Taking into account to be deducted only the dual signatures, and the number found by the experts as having no property, the number remaining is less than one-third of the number of taxpayers of the parish.

## PRESCRIPTION.

Defendant filed a plea of prescription, alleging that plaintiffs' petition, attacking the election, was filed after three months following the election, and three months after the returns of election were promulgated.

Defendants plead the prescription of three months, both to the original and the amended petition, on the ground that the petition was not filed in time.

The election was ordered on the 28th day of October, 1897. The

proceedings were published thirty days, and on the 30th of November, 1897, the election was held.

The Police Jury, in obedience to a writ of mandamus, promulgated the result of the election on January 5th, 1898. Plaintiffs' petition was filed on February 14th, 1898, clearly within the three months.

The contention of the defendants was, at bar, that the ordinance, ordering the election, was not contested in time, and for that reason, whatever deficiency or irregularity there may have been in matter of ordinance, was cured by the prescription of ninety days; in other words, that the curative effects of the prescription applied to the ordinance, if it did not apply to the election.

It would be difficult to conclude that the prescription of ninety days applies as a bar to any attack on the ordinance under which the election was to be held. If that view should be taken, it would follow that to each act, each step of any importance, of different dates leading to the election, a different prescription would apply. First, as to the petition, afterward to the ordinance, and to every other important step taken, leading to the election.

There is nothing, as we read the Statute No. 105 of 1892, to provide for contesting elections which sustains this. Prescriptions begin from the day of promulgation. The ordinance ordering the election is merged into and becomes a part of the election. The promulgation, as to prescription, includes the ordinance as part of the election, which may be contested in ninety days. This was the legislative intent, as we take it, as no reference is made to the ordinance under which an election is called.

The position of the defendants, in the next place, is that no right of action is given to cause to be decreed null, and to set aside, the action of the Police Jury in adopting an ordinance calling a special election under Article 242 of the Constitution, and the cases of State ex· rel. Woodruff vs. Police Jury, 41st Ann., 846; State ex rel. Davis vs. Police Jury, 43rd Ann., 1009, are cited in support of the position. Defendants insist that the Statute of 1892, just cited, was intended to give the right to contest the election, but not the right to contest the ordinance of the Police Jury ordering an election, and that when this court decided as it did in Taxpayers vs. Tax Collector, 49th Ann., 1039, that, prior to the Statute of 1892, it was without jurisdiction to entertain a case of a contested election, and that the contesting of votes is ·a judicial function only in so far as it is authorized by the

Statute; it construed the act to. apply only to a contest over the *casting* and the *returning* of the votes after an election was held, and did not authorize an attack on the right to .hold an election; and that the purpose in enacting the statute last cited was to confer jurisdiction on the courts to entertain a case of contested election proper, counting the votes and promulgating the result, and did not refer to proceedings leading to the election.

There can be no question but that, prior to the Act 106 of 1892, this court was without jurisdiction to entertain a case of contest of an election, and that it was repeatedly held, "the contesting of votes is a judicial function only so far as it is authorized by the statute". We think that the Statute 106. of 1892, now includes authority to contest not only the election, but the ordinance of the Police Jury under which the election was called. The ordinance forms part of the election.

We do not think it was the legislative intent to limit the contest to the mere counting of votes .on the day of election, and to the "irregularity, illegality and fraud" *vel non* on that day. It necessarily referred back to the ordinance calling the election, and the laws under which it was passed. The ."illegality" which the contestant may urge under the terms of the act authorizing a contest, evidently includes not only "illegality" at the election, but illegality growing out of illegal acts or ordinances.

"Any election held under Articles 209, 242 and 250 of the Constitution of 1879, etc.", this language of the statute includes evidently the ordinance under which the election was held.

## The Plea of Estoppel.

We are informed by the able and energetic counsel representing the defendants that there was a mass meeting held in the parish, in which all who felt an interest in the subject participated; that a committee was appointed to prepare a petition to the Police Jury, asking that body to call an election in matter of the tax; that it was numerously signed; that even a number of plaintiffs in this suit signed, also all the members of the Police Jury, except one; that after having obtained the assessor's certificate that it contained more than one-third of the property taxpayers of the parish, they passed an ordinance formally declaring that it contained the requisite number

of signatures, and ordered an election to be held on November 30th, 1897; that no suggestion was made prior to the election that the petition was not signed by one-third of the taxpayers; that the election held was in favor of the tax, and that then a strong opposition arose in remote corners of the parish; that the Police Jury met to tabulate the vote, and disclose the result; that the opposition so influenced three members of the body that they refused, after tabulating the vote, to pass an act declaring the result and levying the tax; that the court was then resorted to, and *mandamus* sued out against the Police Jury, which resulted in a judgment against them, ordering them to pass the ordinance and levy the tax in accordance with the returns of the election; that no appeal was taken from this judgment, and the Police Jury accordingly promulgated the result.

We are further informed that some of the plaintiffs who are suing to annul the election, signed the petition, and asked that it be held, and all of them, with scarcely an exception, took part in the election and voted, some of them taking a very active part. This, defendants contend, was an acquiescence in the election, such as to prevent them from attacking the ordinance calling the election, the form of the ballots used, and sufficiency of the petition presented to the Police Jury, asking that the election be called; citing, in support of their position, Andrus vs. Board of Police, 41st Ann., 697, and other decisions. Counsel candidly admit that there were petitioners in the case before us for decision who did not take part in the election, and did not vote. The admission is sustained by the facts. Though the number who did not participate may be limited, yet as to those, a right of action remains, as they are not estopped. They were not brought even by implication within the effect of the rule of estoppel. As relates to those who did not vote, the act of voting, of the taxpayers who voted, is as to them *res inter alios acta,* and not binding.

We are not persuaded by the argument on this head, that the taxpayers who did not participate in the election are estopped by the facts that the Police Jury, on refusing to levy the tax, were *mandamused* by the railroad company, and a judgment rendered in the proceedings sustained by the writ, and ordering the Police Jury to proceed to declare the result and levy the tax.

In the cases to which defendants refer to sustain the position, there had been delays; questions had been settled in those cited cases

Tax Payers of Webster Parish vs. Police Jury et al.

contradictorily with the parties who had the right to stand in judgment. This court held, particularly in one of the cited cases, that after the great delay, and owing chiefly to the fact that the question involved had been passed upon in prior suits, they, the illegalities and irregularities charged, would not be reconsidered with the view of reversing prior decisions. The parties in the cases to which defendants refer had failed to avail themselves of the opportunity offered to contest the tax, or at any rate, had slept upon whatever rights, if any they ever had, while the local authorities, in their behalf, were contesting, in court, the right to the tax. Some of the decisions rendered became final before the law was enacted, authorizing parties to contest local elections. The Supreme Court, it is true, decided in those cases that the contesting taxpayers were concluded by the litigation carried on for their relief; that there must be an end to litigation, and that the local authorities could not, through different persons, be heard again and again in regard to the same questions.

In the case now before us for decision there is a decided difference; the parties did not have the opportunity to contest the tax, and there were no extraordinary delays. The Police Jury had refused to promulgate the result, and when they were ordered by the court to promulgate it, the protest or objection of the petitioners in the case now before us would no longer have been in time.

Within the ninety days granted by law, they filed their petition. There was no acquiescence in this case.

Different from the cases cited by defendants, the election here was contested on the ground of "irregularity, illegality and fraud."

These allegations were met by three of the members of the Police Jury (a majority) alleging in their answer that they were true.

We do not think it possible under the law to hold that these issues can not be raised on the ground that *mandamus* issued to compel the Police Jury to promulgate the returns, which were promulgated, but in which it does not appear that those issues were presented to and passed upon by the court.

Judgment was rendered in favor of plaintiffs on the ground that the petition to the police jury was not signed by one-third of the property taxpayers.

Defendants appeal.

### ON THE MERITS.

We take up, in the first place, the question of the organization of the railroad company, and the claim that at the time the ordinance calling the election was passed by the Police Jury, the Arkansas, Louisiana and Southern Railway was not legally incorporated under the laws of the State. The articles of incorporation were signed on October 23rd, and recorded on the 26th, following, and both the charter and the ordinance were advertised for the first time, October 29th. There is no contest, as we take it, regarding the facts just recited. The plaintiffs, however, assert that the charter was recorded on the 26th of October, before the Police Jury passed the ordinance calling the election, and we have every reason to believe that it is entirely true.

At the date of the election, on November 30th, 1897, the charter had been duly published fully thirty days.

The first objection on this point is that the charter was published, but the original list was not published.

The statute cited does not require the publication of the subscription list, only the charter; "but it shall not be necessary to publish the names of the subscribers." (R. S., 686). This settles this part of plaintiffs' position and objection.

The next ground in support of the claim is that the railroad was not completely organized; that the adoption of the charter and the other proceedings had, as before stated, was not a sufficient compliance with the statute. We think it sufficient to say in answer the charter and the ordinance calling the election were published simultaneously, and the organization of the company had been entirely completed before the election was held. The officers of the railroad company had been chosen on the day the local tax election was held, and all the requirements complied with.

The prematurity complained of was not of a grave character, and was entirely remedied in due time. We, therefore, hold that there was no downright violation of law as charged, and that an election at the time it was called to determine whether or not a railroad tax should be levied in favor of a "railway enterprise," is not null, on the ground of the incompleteness of the organization under the circumstances here.

This brings us to the claim pressed by plaintiffs, grounded upon the

NEW ORLEANS, JANUARY, 1900. 473

Tax Payers of Webster Parish vs. Police Jury et al.

insufficiency of signatures to the petition to the Police Jury to order the election.

Plaintiffs insist that the petition was not signed by one-third of the property taxpayers.

After a careful examination of the facts relating to this petition, we arrived at the conclusion that plaintiffs' allegation is sustained in this respect.

The defendants seek to meet plaintiffs' contention by urging, in the first place, that the Police Jury could have ordered the election without a petition of the taxpayers, as the language of the statute, defendants contend, makes it the Police Jury's duty, upon the petition of (1-3) one-third of the taxpayers, to order an election, but does not, defendants insist, have the effect of divesting them of the discretion to order an election of their own accord if they choose.

In our judgment, Article 242 of the Constitution, authorized the General Assembly to enact laws empowering the parochial authorities, under certain circumstances, by a vote of the majority of the property taxpayers in number and in value, to levy special taxes to aid railroad enterprises.

This article, on its face, was not self-operative. The statute of 1886, assailed by defendants, was the enabling statute required in order that it might have the intended effects. We have not succeeded in finding that the Police Jury is vested with discretion to order the election without any petition at all.

The parishes possess such corporate powers as are given under the general laws of the State. The only power given here was to call an election whenever one-third of the property taxpayers chose to present a petition for calling the election.

It is a grant of power to hold an election upon the petition of a special number of taxpayers; without it there would be delegated power by the State to the Police Juries to hold an election. The petition of one-third of the property taxpayers is required by the statute in such terms that it is a part of the power, and can not be considered as not written without striking the whole with nullity. In other words, the whole power of the Police Jury to call an election depended on the event of a petition signed by the required number of taxpayers.

In matter of these elections regarding local assessment, it is intended that the majority shall govern, but in the prescribed form

which we understand is intended to restrain hasty and improvident assessments.

The State has the power to prescribe modes in order that the will of the taxpayers may be expressed. We have · nowhere found that authority denied in principle.

The article of the Constitution seems to cover just such condition as the act assailed here contains.

To the General Assembly was granted the right, "under certain circumstances," to legislate as it legislated. Article 242 of the Constitution.

Dillon Municipal Corporations, Section 769 *et seq.*

"But as neither Article 209, nor 242, makes any provision for the method of holding elections thereunder, or for ascertaining the results thereof, nor for the contesting of same, the Legislature is empowered by the latter article to deal with these· questions as it deems best." Citizens and Taxpayers vs. Williams, 49th Ann., 436.

In the alternative, defendants argue if the court should think the petition necessary, then the petition acted upon by the Police Jury was legal and sufficient, and had the required number of taxpayers.

Defendants, in support of this contention, claimed to have shown that the petition contained the full one-third of all the taxpayers of the parish, after deducting the "correction list," or deduction list.

There is a method provided for correcting the assessment roll. The "deduction list" must be duly made and approved by the assessor and collector and submitted to the Auditor, who authorizes the cancellation in cases of error in the assessment.

That method was not followed in this case. It, therefore, devolved upon the defendants to sustain the "deduction list" as introduced as being correct. The testimony is conflicting, and we have not found that the facts justified us in concluding that it should be deducted as proposed.

The assessment roll for 1897, at the time the Police Jury ordered the election, had on it two thousand two hundred and ninety-seven resident taxpayers, and two hundred and twenty-seven non-resident taxpayers, making a total of two thousand five hundred and twenty-four. One-third of the total roll is eight hundred and forty-seven. Less than that number signed the petition for the election. There are a number of signers to the petition who did not have prop-

erty. A number of names were of persons who had not signed it, and had not authorized any one to sign for them.

After deducting these names, fewer than one-third of the property taxpayers of the parish remain.

Even if we were to deduct the corrected list, the petition to the Police Jury would not have the required number of names.

Number of names on the corrected list—one hundred and thirty-five. This leaves two thousand three hundred and eighty-nine.

The petition to the Police Jury, after having made needful correction, does not have one-third of that number.

We are asked to take off from the assessment rolls for 1897, corporations, nine in number; partnerships, fifty-four in number, and ninety-four estates, leaving a total of two thousand and five, and reducing the total, as above, from two thousand three hundred and eighty-nine to two thousand and five.

To this proposition we do not think we should accede.

Corporations are taxpayers, and when their boards so authorize, their agents may sign the petition for the tax election.

Partnerships are taxpayers, and may sign when properly authorized.

Estates, if duly assessed as such, are taxpayers, and with expressed consent of parties in interest, may also petition the Police Jury to call a local (tax) election.

In matter of the election, it has been decided that the property taxpayers of the parish having the right to vote, were the legal voters, and that the majority of those voting was enough to carry the election for the tax.

As relates to the petition for the election, however, the statute provides that it shall be signed by *one-third of the taxpayers of the parish*.

We have found no law upon which to rest the conclusion that this requirement as to the petition referred only to the *taxpayers residing in the parish*. In our judgment, a property taxpayer may sign the petition, though he does not reside in the parish, and had not the right to vote, for the law is plain enough, one-third of the taxpayers of the parish. One may be a taxpayer of a parish without having his residence within its limits.

The question is *jurisdictional*. The full number required must sign.

"It must appear affirmatively that the petition was signed by the number of persons authorized to sign. These are jurisdictional *requirements,* and the burden is on the petitioners to *show* that the required number have signed." People vs. Old Town, 88th Illinois; 21st Am. Railway Reports, 297.

There is a long line of authority upon the subject, all holding that the law's requirements, in this respect, are mandatory.

The following summarizes our views: The railroad company which was to be the recipient of the tax, had the election been legal, was sufficiently organized to be considered a "railroad enterprise," and entitled to the tax, if carried, and to that extent, plaintiffs had no ground of complaint.

As relates to defendants' plea of prescription, we found no good grounds to apply the plea.

With reference to estoppel, the taxpayer was not concluded.

As relates to the petition upon which the Police Jury based its ordinance calling the election, it was not signed by one-third of the property taxpayers; a condition precedent to calling an election.

We agree with our learned brother of the District Court, that the election was not legal and binding on the taxpayers, and it follows that the judgment must be affirmed.

It is affirmed.

Rehearing refused.