No. 14,234.

Marie Louise Gray vs. E. Bourgeois, Tax Collector.

Syllabus.

1. The General Assembly has the constitutional right to fix a period beyond which actions attacking the legality and regularity of special elections held under the provisions of Articles 281 and 232 of the Constitution shall be barred.

2. Section 17 of Act No. 5 of 1899 has not been repealed by either Act No. 12 or Act No. 114 of 1900.

3. It is not necessary at a special election held under Articles Nos. 281 and 232 of the Constitution seeking to obtain from the property taxpayers of a town, authority in municipal authorities to incur a debt for designated purposes. and to secure payment of the same by the levy of a special tax, that the debt to be incurred for each particular purpose should be specially set out. Application of the tax funds in detail inside of the purposes for which they were authorized, is left to be controlled by the discretion of the authorities.

4. Should the municipal authorities attempt to apply the special tax to the payment of debts created anterior to the authorization granted them, or for debts incurred for purposes not authorized by the Constitution, the same may be prevented by the remedy of injunction.

5. Under authority granted by the taxpayers of a town, to incur debt, to the municipal authorities thereof, and to issue bonds to represent same, and to secure the debt and bonds by a special tax, the authorities may, without issuing bonds at all, create a debt for the purposes stated, and levy a special tax within the constitutional limit, if it be more advantageous and advisable to do so. The bond issue is authorized merely in aid of raising the money needed for the purposes stated.

6. When the property taxpayers of a town at a special election have authorized the town authorities to incur a debt of ten thousand dollars, and interest, and authorized the levying of a special tax of five mills for ten years on the valuation and assessment fixed by the Constitution, the authorization is null and

void in so far as the debt and interest authorized to be incurred exceeds the special tax which is authorized to be levied to pay the debt and interest. Each year's instalment of debt and interest must correspond with that year's special tax. The authorization granted is not void in its entirety, but debts and interest incurred under it must be scaled or pruned down.

APPEAL from the Twenty-third Judicial District, Parish of St. Mary—*Allen, J.*

*Charles A. O'Niell,* for Plaintiff, Appellee.

*Charles L. Wise (Foster, Milling, Godchaux & Sanders,* of Counsel), for Defendant, Appellant.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff alleged that the defendant, tax collector of the town of Morgan City, had seized and advertised for sale certain described property of hers in that town in enforcement of a certain illegal tax of five mills on the dollar, assessed by the municipal corporation of Morgan City in 1901.

That said tax was illegal, unconstitutional, null and void, and the manner of attempting to enforce the sale was illegal, informal and irregular, and she was entitled to a writ of injunction restraining and prohibiting said collector from collecting said tax for this:

"(1) That the said special tax is pretended to have been levied according to the provisions of Article 281 of the Constitution of this State, and the notice of election provided for in that article was not published for thirty days, as required; that the ordinance calling said election was only adopted on November 16th, 1900, the first publication was made on November 24th, 1900, and the last publication on November 15th, 1900, and even if the said publication had been made on November 17th—*i. e.,* the first issue of the paper after the ordinance was adopted—thirty clear days would not have elapsed before the election."

"(2)· That the said tax is pretended to have been levied to pay for certain bonds in principal and interest, and the said town of Morgan City has never issued nor negotiated said bonds with interest, according to the assessed valuation of the property in said town."

"(3)· That the notice of said election and the ordinance calling for ·

the same do not state the amount to be devoted to any one object, and states various objects confusedly."

"(4) That at least one of the objects stated in the notice of election and the ordinance calling for same is illegal and unconstitutional, it being stated therein that it is for the purchase of a steam fire engine, when in fact the said fire engine had already been purchased by said corporation many months before the said ordinance was adopted calling for said election, and the corporation notes had been issued in payment of said engine, and the debt had already been contracted."

"(5) That, on account of the illegalities in the said bonds (especially these hereinabove recited), and because of the fact that the tax is inadequate to pay same, and unconstitutional, null and void, the said municipal authorities cannot, and will never, negotiate said bonds; that therefore the said tax has not been pledged to pay said bonds, and is not being devoted for the purposes stated in the publication aforesaid; and that, in fact, the proceeds of said tax have been partially at least used for paying a debt which was in existence and had been contracted before the call for the election was made, or the ordinance adopted."

"(6) That the publication of the notice of sale of said property has not been published for the length of time required by law, and will not be published hereafter, because the office of the newspaper in which it has appeared has been destroyed by fire. She averred that she was entitled to a writ of injunction restraining and prohibiting said tax collector of Morgan City from selling said property. She prayed that the tax collector be cited to show cause why a writ of injunction should not issue, restraining and enjoining him from collecting the said tax; that on trial of the rule the writ of injunction issue, that said writ be maintained, and the said tax declared and decreed absolutely null and void."

The court ordered the rule to issue.

The defendant excepted that the town of Morgan City was a necessary party. Under reservation of the exception defendant answered the rule, pleading first the general issue. He maintained the validity and legality of the tax. He averred that the tax was levied by the proper authority, after all the requirements of law had been complied with. He averred that plaintiff having become delinquent he (tax collector), after complying with the formalities of law, had legally advertised said property for sale, and the advertisement was legal.

The District Court held that it had been proved that the special election held in the town of Morgan City on December 17th, 1900, was held on the thirtieth (30th) day from the first publication of the notice of election and that same was therefore not preceded by the thirty (30) days for publication required by the Constitution and laws of the State.

It therefore adjudged and decreed that an injunction issue as prayed for, restraining the enforcement of the tax until further orders.

Defendant answered on the merits, reiterating the allegations he had made in his answer to the rule.

The court rendered judgment for the same reasons which it had assigned for issuing the injunction prayed for by the plaintiff, adjudged and decreed the special tax of five mills levied at said special election on November 17th, 1900, on all property subject to taxation within the said corporation of Morgan City, was unconstitutional, null and void, and made perpetual the injunction which had been issued.

The tax collector appealed.

Appellant pleads in the Supreme Court the prescription of six months, alleging that the action instituted by the plaintiff was instituted more than six months from the date of the promulgation of the result of the special election held on the 17th day of December, 1900, at which election the special tax, the collection of which is hereby enjoined, was voted,—all of which appears upon the face of the record herein filed; that the right to contest the validity of said election and said taxes voted at said election must be asserted within six months from the date on which the result of said election is promulgated, or the right to institute such an action is barred; that, as said plaintiff and appellee allowed more than six months to elapse from the date on which the result of said election was promulgated, her right of action as set forth in her petition is prescribed by the lapse of six months, and defendant and appellant therefore pleads in bar of plaintiff's action the prescription of six months.

In view of the premises defendant and appellant prays that the plea of prescription herein filed be sustained; that the demand of appellee be rejected at her cost, and for general relief.

On the 17th of December, 1900, a special election was held in the corporation of Morgan City by virtue of an ordinance of the Common Council of that town, adopted on the 16th of November, to take the

sense of the property taxpayers of Morgan City as to whether the said municipal corporation should be authorized:

1st. To incur a debt of ten thousand dollars for the purchase of a steam fire engine and hose cart, for the construction and erection of a suitable building to house said apparatus, and for the construction and erection of a public market building in and for said town, the title of which shall vest in said municipality.

2nd. To issue negotiable bonds aggregating ten thousand dollars in principal, running through a period of ten years and bearing interest at the rate of five per cent. per annum from their date to represent said indebtedness; each of said bonds to be of a face value of one thousand dollars and numbered from one to ten, respectively, payable at the following periods of time, to-wit: One bond of one thousand dollars shall mature and be paid on the first day of March in each year, for a period of ten years, commencing March 1st, 1901, and that the interest shall be paid on the 1st of March, in each year, commencing March 1st, 1901, upon the whole of the bonds remaining unpaid.

3rd. To levy, assess and collect for and during each of the years 1900, 1901, 1902, 1903, 1904, 1905, 1906, 1907, 1908 and 1909, a special tax of five mills on the dollar, of the assessed valuation in each year, of all the property in the corporate limits of said town, subject to taxation under the laws of this State, to pay the said bonds and interest.

Three commissioners were appointed by the Common Council to serve at the said election. The ordinance under which the election was held provided that due publication of the ordinance and notice of said · election be made by the mayor in the official journal of the town of Morgan City for thirty days preceding such election as by law required. On the 19th of December, 1900, the three commissioners, in presence of three witneses, met for the purpose and compiled the returns sent in by the commissioners of the Morgan City precinct, and in their return or *proces verbal* of compilation declared that having compiled the returns sent in by the commissioners of the said town, they found that there were cast for the proposition aforesaid sixty-five votes and there were cast against the proposition six votes.

That the amount of the assessed value of the property voted for the proposition was *seventy-eight thousand seven hundred and forty dollars* ($78,740) and the amount of the assessed value of the property voted against the proposition was three thousand eight hundred and ninety dollars ($3,890). The mayor of Morgan City promulgated the

result of the election on the 24th of December, 1900. On the 26th of December, 1900, the Common Council met, the declared object of the meeting being " to carry out the levying and collecting of the special tax for improvements, approved by the taxpayers." An ordinance was then adopted entitled "An ordinance to incur a debt of ten thousand dollars, to issue interest-bearing negotiable bonds therefor, running through a period of ten years, and to levy, assess and collect a special five-mill tax on all property in the limits of the town of Morgan City to pay said bonds in principal and interest, pursuant to authority and power granted by the property taxpayers at the special election held on December 17th, 1900, under Article 281 of the Constitution of 1898, and Act No. 114 of the Acts of 1900 of the State of Louisiana."

The ordinance, following the language of the proposition voted on by the taxpayers, ordained that the corporation of Morgan City incur a debt of ten thousand dollars, for the purposes stated (stating them) ; that interest-bearing negotiable bonds be issued to represent said indebtedness aggregating the sum of ten thousand dollars in principal, running through a period of ten years, and bearing interest at the rate of five per cent. per annum from their date, each of said bonds to be of the face value of one thousand dollars, and numbered from one to ten respectively; one each of said bonds to mature and become payable on the 1st day of March of each and every year for a period of ten years, commencing in the year 1901; that the interest shall be paid on the 1st of March of year commencing 1st of March, 1901, upon the whole of the bonds remaining unpaid; that to pay said bonds in principal and interest a special tax of five mills on the dollar of the assessed valuation in each year of all the property within the corporate limits of the town, subject to taxation under the laws of the State, shall be levied, assessed and collected for and during each of the years from 1900 to 1909, both inclusive.

That the tax collector keep a separate account of all the taxes collected under the ordinance, and that they be deposited with the town treasurer and by him deposited in a special account and shall be devoted exclusively to the purposes set forth, and the town treasurer be prohibited from making any disbursement of the said taxes except for the purposes stated.

In the record is an affidavit and certificate of the assessor of the Parish of St. Mary, of date December 26th, 1900, to the effect that the assessment of the town of Morgan City for the year 1900, amounts to

the sum of two hundred and thirty-eight thousand seven hundred and five dollars; that this assessment is the basis of the five-mill levy for a bond issue of ten thousand dollars, authorized and ordered to be issued by the town of Morgan City, at a special election held for that purpose on December 17th, 1900, and that five-mills on the dollar is levied and ·assessed on said assessment of two hundred and thirty-eight thousand seven hundred and five dollars, and that upon this assessment the five mills levied will be collected for the purposes named in the ordinance of the town of Morgan City, to-wit: the discharge of the principal· and interest of the bond issue of ten thousand dollars.

The petition in the present suit was filed on the 8th of July, 1901, *more than six months after the promulgation of the election returns.*

From the allegations of the petition it appears that the special tax for the year 1900 was in process of collection by the town tax collector when the present suit was instituted, as its object was to stay by injunction the sale of plaintiff's property, which had been seized and was about to be sold in enforcement of the same. The suit is therefore a collateral attack upon the election proceedings in aid and support of her individual resistance of the tax upon her own property. The tax is primarily sought to be decreed unconstitutional, null and void to effect that object, though plaintiff's prayer is general and sweeping.

Article 232 of the Constitution declares that no municipal tax for all purposes whatsoever shall exceed in any one year ten mills on the dollar of valuation, providing that for giving additional support to public schools and for the purpose of erecting and constructing public buildings, public school houses, bridges, wharves, levees, sewerage work and other works of public improvement, the title to which shall be in the public, * * * any municipal corporation may levy a special tax in excess of said limitation whenever the rate of such increase and the number of years it is to be levied, and the purposes for which the tax is intended shall have been submitted to a vote of the property taxpayers of such municipality entitled to vote, under the election laws of the State, and a majority of the same in numbers and in value, voting at such election shall have voted therefor."

This article of the Constitution was followed by Article 281, which declares that "Municipal corporations * * * when authorized so to do by a vote of a majority in number and amount of the property taxpayers qualified as electors under the Constitution and laws of this

State, voting at an election held for that purpose, after due notice of said election has been published for thirty days in the official journal of the municipality, and when there is no official journal in a news-paper published therein, may incur debt and issue negotiable bonds therefor to the extent of one-tenth of the assessed valuation of the property within said municipal corporation as shown by the last assessment made prior to the submission of the proposition to the property taxpayers as above provided, and may be authorized by the property taxpayers voting at said election to levy and assess special taxes upon property, subject to taxation in the corporation, provided said taxes so imposed do not exceed five mills on the dollar of the valuation in any one year, nor run for a gerater number of years than the number named in the proposition, submitted to the taxpayers. No bonds shall be issued for any other purpose than stated in the submission of the proposition to the taxpayers and published for thirty days as aforesaid, nor for a greater amount than therein mentioned, nor shall such bonds be issued for any other purpose than for paving and improving streets, roads and alleys, purchasing or constructing a system of waterworks, sewerage, drainage, lights, public parks, and buildings, bridges and other works of public improvement, the title to which shall vest in the municipal corporation, nor shall such bonds run for a longer period than forty years from their date, nor bear a greater rate of interest than five per cent. per annum, or be sold by the municipal corporation issuing same for less than par."

Several statutes were adopted by the General Assembly in enforcement of Article 281 of the Constitution, to-wit: Act No. 5 of 1899 and Acts 12 and 114 of 1900. Act No. 5 of 1899 not having fully covered the subject-matter it was dealing with, Act No. 12 was passed in 1900 and was evidently designed as a supplement thereto, with some alterations or modifications of the former act. By its title it provided for the repeal of all laws or parts of laws conflicting therewith, so far as they *appertained* to *drainage* districts.

Section 18 of the act—the repealing clause—declared that all laws or parts of laws appertaining to *drainage* districts contrary to and inconsistent with the provisions of this act are hereby repealed, provided that all laws or parts of laws which are applicable alike to drainage districts and other corporations provided for by the Constitution or laws of Louisiana, shall in no manner be affected by the provisions of this act, in so far as they relate to the other corporations above referred to.

Act No. 114 of 1900 declared one of its purposes to be "to repeal all laws contrary to or in conflict therewith."

Section 9—the repealing clause of the act—declared that all laws or parts of laws contrary to or in conflict with the provisions of the act, be and the same are hereby repealed, especially Act No. 5 of the extra session of 1899, and that this act take effect from and after its passage.

This court has held that under the title of this act, Act No. 5 of the extra session of 1899 was repealed only in so far as its provisions were "contrary to or in conflict" with the provisions of the last mentioned act.

The 17th section of Act No. 5 of 1899 declared that "from and after a delay of six months from the date of the promulgation of the result of any such election no one shall have any cause of action to contest the regularity, formality or legality of the petition of taxpayers for the calling of any election herein provided for, of the ordering of the same, of the notice of same, of the holding of same, of the returns thereof, of the examination and count of the ballots, of the examination and canvass of the returns, of the declaration of the result, or of the promulgation of the result of any such election, and that after such delay all such causes of action should be prescribed."

This prescription the defendant has invoked. Plaintiff contends that Section 17 of Act No. 5 of 1899 was repealed by the later acts of 1900 and should this be not the case, then that section is inoperative or unconstitutional in view of the fact that the requirement of the notice which must have preceded the election was a "constitutional mandatory requirement," the force of which could not be broken by the legislature, directly or indirectly."

## Opinion.

We are of the opinion that Section 17 of Act No. 5 of the extra session of 1899 has not been repealed by either Act No. 12 or Act No. 114 of 1900. It has the same effect now as it had when enacted. The General Assembly did not attempt through that section to alter in any manner a constitutional requirement. It simply directed that all parties interested in the subject-matter of the elections provided for who had objections to urge against the validity or legality of the election, should advance them within a given fixed delay. The section was simply a statute of repose, a legislative estoppel against those particular objections being urged later as grounds of complaint.

Plaintiff is in error in supposing that the legislature was without power to work the estoppel to the extent it did. There is scarcely any right which a person has from which he may not cut himself off by his own action or inaction. The want of notice, as the position of third parties or rights of third persons may be involved, may be acquiesced in. The notice is a provision of law enacted for the benefit of and protection of particular persons or classes of persons and is not to be forcedly exacted, if in reality in some particular case it be not to their advantage.

They may waive their privilege to object should they think proper, and silence and inaction are declared expressly under our Civil Code to be "under some circumstances the means of showing an assent that creates an obligation." This statute in question simply fixes by law in this particular class of cases, the facts and circumstances which will be held to evidence "an assent" to what has been done.

Parties objecting in fact from the first to the election, or anything connected therewith, may by their attitude be thrown practically by the law into the list of those who originally concurred in and brought about the election. It has been repeatedly held that a person who has actively assisted in bringing about the passage of an act cannot subsequently question its constitutionality, and that one not injuriously affected by a statute cannot do so. So, also, a person voting affirmatively for the doing of a certain act, has been held estopped from subsequently contesting the act which was done (partially at least) by effect of his vote.

The statute of repose simply closes the door to inquiry on this subject and assumes that the party seeking to assail the act is one not entitled to raise that issue. An absolute loss of ownership is a much more serious loss than the loss of a right to resist the enforcement of a tax upon that property, and yet by statute law the owner exposes himself to the loss of his right of ownership in a thing if he permits it to remain in the possession of a third person for a time sufficient to enable the latter to acquire it by prescription. (C. C. 496-2015.)

If the right be lost, his own negligence and *laches* are the proximate cause of the same; he cannot urge that being guaranteed in the protection of his property by the Constitution it has been taken from him "without due process of law."

Cooley, in his work on Constitutional Limitations (chapter 7, p. 181, first edition), referring to attacks upon the constitutionality of a law, says: "There are cases where a law in its application to a particular

case must be sustained because the party who makes objection has by prior action precluded himself from being heard against it."

"Where a constitutional provision is designed for the protection solely of the property rights, it is competent for him to waive the protection and to consent to such action as would be invalid if taken against his will. On this ground it has been held that an act appropriating the private property of one person for the private purposes of another, on compensation made, was valid if he whose property was taken assented thereto; and that he did assent and waive the constitutional privilege, if he received the compensation awarded, or brought an action to recover it. So if an act providing for the appropriation of property for a public use shall authorize more to be taken than the use requires, although such act would be void without the owner's assent, yet with it all objection on the ground of unconstitutionality is removed. And where parties were authorized by statute to erect a dam across a river, provided they should first execute a bond to the people conditioned to pay such damages as each and every person might sustain in consequence of the erection of the dam, the damages to be assessed as provided by the statute, it was held, in an action on the bond to recover those damages, that the party erecting the dam and who had received the benefit of the statute, was precluded by his action from contesting its validity, and could not insist upon his right to a common law trial by jury. In these and the like cases the statute must be read with an implied *proviso* that the party to be affected shall assent thereto; and such consent removes all obstacle; and lets the statute in to operate the same as if it had in terms contained the condition. In criminal cases, however, the doctrine that a constitutional privilege may be waived must be true to a very limited extent only. A party may consent to waive rights of property, but the trial and punishment for public offenses are not within the province of individual consent or agreement."

Another faviliar instance of waiver or estoppel is when a party fails to invoke a constitutional right or privilege until after judgment has gone against him. The privilege or right has not been set aside, but lost simply because it has not been advanced.

*Non constat* in the case at bar that the plaintiff was not one of those who voted for the proposition. So far as the pleadings show, no one but the plaintiff objects to the result of the special election, the balance of the community desire the election to stand. She should not be per-

mitted in this collateral way to force matters to be set aside so far as they are concerned, and she should not be permitted to escape individual taxation and yet reap as a citizen of the town the advantages of the outlay of the money of the other citizens.

We are of the opinion that the exception of prescription is well taken against the attack upon the legality of the election of the 17th of December, 1900, and it is hereby sustained.

The sustaining of this plea leaves before us for consideration the other objections urged by the plaintiff. We will take them up, though not in the order in which they were made:

1st. She urges that her property was about to be sold in enforcement of the tax which she is resisting without thirty days' advertisement.

That is a matter which does not come before us in this case, the sole issue before this court being as to the constitutionality or legality of the tax.

2nd. She contends that the notice of election and the ordinance providing for the same do not state the amount to be devoted to any one object, but merely mention the various objects confusedly. Neither the Constitution nor the laws thereunder require a more than detailed statement of the purposes for which the debt was to be created or the tax applied than was given. The people by their vote seem to be satisfied to leave the application of the tax funds (inside of the purposes for which the tax was authorized to be levied) to the discretion of the Common Council.

3rd. That on account of the illegalities in the bonds and because of the unconstitutionality of the tax and its inadequacy to pay said bonds, the corporation cannot negotiate the same and has not been able to pledge the tax, and the proceeds of the tax are therefore being used to pay a debt of anterior existence.

These are mere allegations and tender no issue, except the last affirmative allegation that the proceeds of the tax are being used to pay a debt of anterior existence.

There is no evidence whatever in the record to support that averment and if this were true, it would authorize an action against the council for illegal diversion of the fund and a preventive injunction. This, however, would present a question entirely distinct from that of the legality and constitutionality of the tax. There is no evidence or claim that any debt has as yet been created by the Common Council under the authority granted to it by the taxpayers, and none that any

bonds have yet been executed or that any endeavor has been made prospectively to negotiate them. If, under the circumstances of the case, bonds if executed could not be negotiated, it would be a very good reason for the council not to execute them at all. There is no obligation on the part of the council to do so; it is merely authorized, not obligated, to issue bonds.

Under the authority granted to it by the taxpayers it may, without issuing bonds at all, create debt within the constitutional limit and levy special taxes within the constitutional limit, if it be more advantageous to do so. The bond issue was merely authorized in aid of raising the money needed for the purposes stated.

4th. That the tax is pretended to have been levied to pay for certain bonds in principal and interest, and the said town has never issued nor negotiated said bonds, and in fact the said tax is inadequate to pay said bonds with interest, according to the assessed valuation of the said town.

In respect to this point, counsel of the plaintiff in their brief say:

"The second cause of nullity, that the tax is inadequate to meet the proposed bond issue, is destructive of the validity of the tax."

The total amount of the assessed valuation of all property situated in the town of Morgan City, for the year 1900, was $228,705. The five mill tax on the valuation would be $114.52½. The bond issue provides for ten bonds of $1000 each, one of which is payable on the 1st of March, of each year, and the interest on the entire debt is payable annually on the same day. At the expiration of the first year the town would be compelled to pay $500 interest, and one bond of $1000, making a total of $1500, at the expiration of the second year the town would owe $1450, and the liability would thus decrease at the rate of $50 per year, and not until the expiration of eight years would the tax be adequate to meet the debt incurred that year. During the eight years the deficit would accumulate to an extent that it would be impossible to finance the town. In the case of Callahan vs. Alexander, 52 Ann. 1013, municipal corporations are held to be absolutely prohibited from predicating the issuance of bonds upon an appropriation of any portion of the general fund tax. The special tax must be adequate to meet the bond issue and the bonds cannot be issued for any greater amount than the special tax will take care of.

Before examining this last point, it may be well to notice that no attempt has been made to have pledged or appropriated, in advance,

for the payment of the debt to be incurred, any portion of the taxes set aside for the alimony of the town, as was done in the Callahan case. If the town authorities had in view the application of a portion of those taxes to that debt, they evidently did not propose to do so until after the financial situation of the town in any given year had been first fixed.

The 23rd Section of Act No. 5, declares that all incomes derived from the public improvements purchased or constructed and all incomes derived from public markets, waterworks, or lights, when so set aside by the legislative body of the municipality shall, after the expenses and costs of maintenance of said improvements are paid for, constitute a trust fund to be devoted to the payment of the interest on the bonds so issued or the indebtedness so contracted, and any surplus after the payment of such interest shall be placed in the sinking fund (the sinking fund provided for by the 24th Section of the Act) to be used in the extinguishment of the principal of said obligations at maturity. Whether or not the town has any such income we do not know, nor can we know whether there ever will be such an income, and, if so, how much it will be.

We have no knowledge whatever of the financial condition of the town of Morgan City. We do not know whether it owes debts or not, whether it has issued bonds or not. If it owes debts, or has issued bonds, the fact does not appear in the transcript, but the plaintiff does not charge that the amount of debt which the town has been authorized to incur exceeds the constitutional limit of one-tenth.

Standing by itself, the limit of indebtedness has not been exceeded. The rate of taxation authorized by the taxpayers to be levied for the purpose of paying the debt which they authorized the municipal authorities to incur, is also within the constitutional limit of five mills. Though the proposition submitted to the taxpayers and voted for affirmatively by them conform, so far as the record discloses, to the letter of the expressed constitutional requirements of Articles 232 and 281 of the Constitution of 1898, a question arises none the less whether it be in fact constitutional as made and to the full extent made. The Articles of the Constitution while fixing a rate of the special taxation not to be exceeded and an amount of indebtedness not to exceed a certain amount relatively to the amount of the valuation of the taxable property of the town, they have not declared that the amount of the debt authorized to be incurred and the bonds authorized to be

issued must, as to amount, fall inside of the fund provided for their payment through the special tax.

The fixed policy of the State has for many years prior to the Constitution of 1898 been adverse to the creation, by municipal corporations, of a floating unsecured debt. That policy found expression in the 2448th Section of the Revised Statutes, which declares that the Police Juries of the several parishes, and the constituted authorities of ·the incorporated towns and cities in this State, shall not hereafter have power to contract any debt or pecuniary liability without *fully* providing in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted."

We are not aware of any statute repealing this section of the law. We do not find any conflict between it and the provisions of the Constitution. They are not inconsistent provisions. In the case at bar the taxpayers of the town of Morgan City were solicited by the town authorities to authorize them to incur a debt of ten thousand dollars for certain purposes; this they consented to do, but at the same time, under and through the same proposition, they consent that the corporation issue bonds to the amount of ten thousand dollars with five per cent. interest from date, payable annually, an authorization varying materially from the authority to create a debt of ten thousand dollars; a debt of ten thousand dollars would stand fully provided for by the special five-mill tax, but the debt evidenced by bonds such as were authorized would not. For a portion of this amount they would be unsecured and unprovided for.

We are of the opinion that under the Articles of the Constitution cited, property taxpayers of a municipality are not warranted in authorizing the creation of an unsecured debt or unsecured bonds, but that the debt and bonds authorized, while conforming in other respects to the letter of the Articles, must be such as will be fully provided for as to principal and interest through the special tax provided for their payment; in other words that the debt should not exceed in amount the special tax which is authorized to be levied to pay it. The debt, with its interest, authorized by the property taxpayers of Morgan City to be created by its municipal authorities exceeds the special tax provided to meet it and to that extent their action is null, void and of no effect.

We have next to examine whether, under the language of the propositions as submitted to the taxpayers, and as then voted upon by them,

any portion of the debt can be created, or any bonds other than those specifically authorized to be issued, can be executed and issued. It will be seen that while the taxpayers authorized the creation of a debt of ten thousand dollars, they at the same time authorized the execution and issuing of certain bonds specially and minutely described as to dates, amounts, maturities and interest, etc., and authorized the levying of a special tax to pay such bonds. The authorities, instead of leaving certain details of the ordinance open to be accommodated to the conditions of a contract which they might find necessary or might be able to make, fixed them by anticipation, and the question is whether the authorities can alter the form of the bonds, their amounts, etl., etc., so as to "prune them down" (to use an expression easily understood) to conform to the debt legally authorized to be created by the taxpayers. We may state here that the debt which the authorities of Morgan City applied to the taxpayers to be authorized to incur, and which they were authorized to incur, was in reality one of ten thousand dollars, with legal interest thereon, as shown by the proposition submitted and voted upon.

We do not think that the authorization voted was null and void in its entirety from the mere fact that it attempted to convey a power greater than the taxpayers were competent to grant. The power granted should be held legal up to and within the amount of the special tax provided for as the means of paying the principal and interest of the debt to be contracted. Oubre vs. The Town of Donaldsonville, 33 Ann. 390. The authorities of Morgan City are authorized to act under the authorization as conferred upon them by the property taxpayers of the said election to incur debt and issue bonds as voted for to that extent, but no further.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed, that the judgment of the District Court overruling the exception of the prescription of six months levelled against plaintiff's attack upon the validity and legality of the election held in Morgan City on the 17th of December, 1900, referred to in the pleadings, be and the same is hereby annulled, avoided and reversed, and said exception of prescription is hereby sustained and plaintiff's demand in so far as it attacked the validity and legality of said election, be and the same is dismissed.

That there be further judgment decreeing null, void and of no effect, so much of the authorization granted by said property tax-

payers at said election as authorizes the municipal authorities of Morgan City to incur debt and to issue bonds for an amount greater in principal and interest than will be secured as to payment of principal and interest by the special tax authorized by the taxpayers at said election to be levied to pay said debt and bonds. Plaintiff's demand against defendants is perpetuated to the extent of enjoining them from incurring debt or issuing bonds for an amount greater than said special tax will provide the means for paying both principal and interest.

It is further ordered, adjudged and decreed, that except in so far as judgment has been hereinbefore rendered in favor of the plaintiff, against the defendant, plaintiff's demand be, and it is hereby, rejected and her suit dismissed. Costs of appeal to be borne by the appellee. Cost of the District Court to be paid by the defendants.

Rehearing refused.

MONROE, J., dissents.

PROVOSTY, J., dissents.