Statement of the Case.
NICHOLLS, C. J.
On the 16th of December, 1897, the police jury of the parish of Winn met in special session, at the call of its president, upon the petition of 15 freeholders, praying for such meeting to be convened “for the purpose of ordering an election and passing suitable ordinances, as required by law, to vote a special tax of five mills. for ten years in aid of the Shreveport, Junction City & Alexandria Railroad,” and stating “that at that meeting the petition, as required by law, to your honorable body, to order such election, will be presented in due form, when your body js so convened.”
At the meeting so convened, a petition was presented to the police jury, signed by parties representing themselves as constituting one-third of the qualified voters and property tax payers of Winn parish, praying, it “to pass an ordinance calling for an election, pursuant to the law, and Acts No. 35 of 1886 and No. 153 of 1894 of the General Assembly of Louisiana, submitting to the legally qualified property tax paying voters of said parish of Winn, qualified to vote, according to law, on the question of voting a five-mill tax for ten years on the assessed valuation of the property of said parish in aid and to aid the Shreveport, Junction City & Alexandria Railroad in building and operating a railroad from the northern line of the parish of Winn, and passing through said parish by the courthouse, and out at the south line of said parish, to levy an annual tax of five mills on the dollar on the assessment of all property in said parish for each year for a period of ten years in aid of said railroad as aforesaid. Said taxes, as so levied, to be collected as other taxes assessed in Winn parish, and the same paid over direct to said railroad, or its assigns or successors. The said taxes to be levied and collected when said railroad has been completed or constructed to the center of the said parish, or to a line direct from east to west through said parish, and through said center and roads as aforesaid to the town of Winnfield, and the same to be paid over to said railroad company. That at said election the form of the ballot used shall be as follows: Those voting for the tax to be levied as petitioned for shall have printed on uniform size and color these words: ‘For special tax of five mills-on the dollar of assessed property in W-inn parish, Louisiana, in each year, for ten years, in aid of the Shreveport, Junction City & Alexandria Railroad Company.’ And those voting against the tax shall use ballots of uniform form and size, with these words printed on same: ‘Against the special tax of five mills on the dollar of assessed property in the parish of Winn, La., each year for ten years, in aid of the Shreveport, Junction City & Alexandria Railroad Company.’
“That such ordinances be passed as shall be necessary to secure the election desired, and the enforcement of the same according' to law, after due and legal returns of said election.”
A committee was appointed by the police-jury to examine the tax roll, and ascertain if the names signed were property tax payers, and whether they constituted one-third of the property tax payers of the parish.
The committee reported that over one-third of the property tax payers of the parish had’signed the petition. The police jury thereupon adopted an ordinance entitled “An ordinance ordering the election by the taxpaying voters of the parish of Winn to determine whether a five-mill tax for ten years- *150 shall be levied on all the property subject to taxation within the limits of the parish ot Winn for the purpose of aiding in the building and the construction of the Alexandria, Junction City & Shreveport Railroad from Junction City to Gulf connections through Winn parish, and within one-half mile of the court house in the town of Winnfield, La., and fixing the date and manner of holding said election.”
The ordinance contained eight sections, which followed a preamble in the following words:
“Whereas, the petition of more than one-third of the property tax payers of the parish of Winn has been presented to the police jury, praying and demanding that an election may be ordered and be held in accordance with the law and according to the Acts No. 153 of 1894, and No. 35 of 1886, to determine whether a five-mill tax per annum for ten years shall be levied on all the property in the parish subject to taxation, to build and construct the Alexandria, Junction City & Shreveport Railroad from Junction City to Gulf connections, to pass through Winn parish and within one-half mile of the courthouse in Winnfield, and to fix the time when said assessment shall be made, and to fix the date and manner of holding said election.
“Therefore” (section 1), etc.
The first section ordered the election to be held on the 1st day of February, 1898, at the precincts at which the last general election was held, and in accordance with the law, and according to Act No. 153, p. 191, of 1894, and Act No. 35, p. 44, of 1886.
The second section ordered the election to be held under the general election law of the state, and directed the president of the police jury to have notice given in the official journal of the parish of the object, time, and place of holding the same, for more than 30 days; the notice to set forth the manner in which the election was to be conducted, and designating the polling places and the names of the commissioners,-the manner of counting the vot'es, and the returns thereof.
The third section ordered the returns to be made in accordance with law to the board of supervisors of election, and that the board of supervisors should make' the returns of said election to the police jury, and that said returns should be proclaimed by the police jury or its president.
The fourth section provided that if this-election be in favor of the tax of five mills, as aforesaid, no assessment or collection of said tax should be made until said railroad is built and constructed and in operation to or within one-half mile of the courthouse in the town of Winnfield, and a depot established within one-half mile of said courthouse.
The fifth section ordered that each voter write or have his name written on the back of his ticket, and the amount of property voted.
The sixth section ordered the assessor to-furnish one list of the taxpayers at each polling place for each ward in the parish, with the amount of property assessed.
The seventh section enacted that the construction of the road should be actively begun within six months after said tax shall have been voted and legally promulgated, and that the same should be in operation to the said town of Winnfield within three years-from said date.
The eighth section declared that the ordinance should take effect from and after its-passage.
On February 7, 1898, the police jury met, and received from the board of supervisors of election the return of the election held under the order.
That body reported that they had compiled the returns, and had ascertained that the votes cast in the several voting places' in the parish at the election for special tax of five mills on the dollar of all assessed property in Winn parish for 10 years, annually, in aid of the Alexandria, Junction City & Shreveport Railway Company were-as follows:
Number of votes in favor of a special tax of five mills on the dollar per annum of all the assessed property in Winn parish for 10-years, annually, in aid of the Alexandria, Junction City & Shreveport Railway Company, 321.
Number of votes against a special tax of five mills on the dollar of all the assessed property in Winn parish for a period of 10' years, annually, in aid of the Alexandria, Junction City & Shreveport Railway Company, 282.
*152 Amount of property voted in favor of a special fiv.e-mill tax on the dollar annually for 10 years to aid the Alexandria, Junction City & Shreveport Railway Company, $133,-036.50.
Amount of property voted against a special tax of five mills on the dollar annually for ten years in aid of the Alexandria, Junction City & Shreveport Railway Company, $103,803.
The board declared in their return that they had made public proclamation of the res.ult on the 30th of February, 1898.
The police jury, having taken cognizance of this return, adopted an ordinance in which, after reciting that it had examined the same, and found that a majority in number and- amount of the legally qualified voters in said parish voted in favor of said tax at said election, therefore it declared said election carried in favor of the five-mill tax, and ordered the same promulgated, and a five-mill tax, as required by law, to pay said tax, the said levy to be made whenever the said railroad is to be completed and in operation from Junction City to Winnfield, and said tax to be assessed and collected in same manner as state and parish taxes are ■collected, provided that no assessment of said tax, nor collection thereof, shall be made ■until the said road is completed and in active operation from -to the town of Winnfield, and provided, further, that, in order to earn said tax, the said road must be completed as aforesaid within three years from the promulgation of the ordinance as required by law.
The police jury proceeded to promulgate the returns, and declared the five-mill tax to have been carried by a majority of votes in number of persons voting and amounts •of property.
The Alexandria, Junction City & Shreveport Railway Company was organized on the '29th of June, 1897, by act before William R. Roberts, notary public for the parish of Union.
In March, 1899, the Alexandria, Junction City & Shreveport Railway Company was •consolidated with the Arkansas Southern Railroad Company of Arkansas, under the name of the “Arkansas Southern Railroad •Company,” and the articles of consolidation were registered in the office of the Secretary of State of Louisiana on the - day of -, as appears by the certificate of the Assistant Secretary of State.
On the 10th of July, 1900, a resolution was adopted by the police jury, which, after reciting that the Arkansas Southern Railroad Company had petitioned it to grant an extension of time in which to complete its railroad to the town of Winnfield, and earn its five-mill tax voted to it by the property tax payers in aid of the construction of the line of'road from Junction City, via Ruston, through said parish, by and through the said town of Winnfield, and that the reasons and circumstances justified the granting of said extension, granted it an extension of three months, beginning on the 17th of February, 1901; the extension to apply to, and be an extension of, all delays stipulated in the petition of the property tax payers, and the ordinance of the police jury thereunder, provided the company begin the construction of said' road in the direction of Winnfield at once, and continue the same with all reasonable dispatch until the same is completed and in operation to Winnfield, and provided, further, that the company does not claim the exemption from taxation by reason of this extension having been given, and provided, further, that the extension is not intended to change the original contract, except as to the time in which the road had to earn its five-mill tax; the ordinance of extension to be in full force and effect upon delivery to the president of the police jury of a good and satisfactory bond for the sum of $20,000, guarantying the comjfietion of the road to Winnfield by January 18, 1902; the ordinance otherwise to be null and void.
On the 14th of July, 1900, the president of the Arkansas Southern Railway Company was authorized by its board of directors to execute the bond called for by the ordinance, in consideration of the extension of time for three months in which the company was to earn the five-mill tax. On the same day the company executed the required bond.
On the-day of --- the police jury adopted an ordinance in which, after reciting the fact that the railroad had been completed to the town of Winnfield in fulfillment of the company’s contract, a three-months extension having been granted by the police jury, by which it levied a special *154 tax of five mills on the assessed value of all the property, real and personal, in the parish of "Winn, for the year 1901, and each year subsequent for 10- years, in favor of the Arkansas Southern Railroad Company, pursuant to the special election, and the assessor and tax collector were directed and ordered to assess, extend, and collect the said special tax, and pay same over to said company, and the tax collector was authorized to enforce the collection of the said tax in the same way and by the same remedies and penalties as other taxes.
In February, 1902, a number of persons, describing themselves as resident citizens, taxpayers of the parish of Winn, the Bodcaw Lumber Company, representing itself as an Arkansas corporation having its Louisiana domicile in Webster parish, and the Louisiana Lumber Comxaany, a corporation domiciled in Ouachita parish, filed a petition in the district court for Winn parish, service of which petition was accepted by the police jury, the assessor, and the tax collector on the 28th of February, 1902, by the Arkansas Southern Railroad Company on the 21st of April, 1902, in which they averred that the sheriff and ex officio tax collector of the parish of Winn, acting under and by virtue of an ordinance of the police jury of said parish adopted on the 9th of October, 1901, had demanded of them, for the benefit of the Arkansas Southern Railroad Company, the payment of a special tax of five mills on the dollar on the assessed valuation of their property described on the tax rolls for the year 1901, and had collected the same from all of the petitioners (with certain exceptions named); they having been forced, over their strenuous objections and protest, to pay the same in order to avoid a sale of their property for the payment of state and parish taxes thereon, or litigation with respect to said taxes, for the reason that the tax collector refused to accept payment of said taxes and issue receipts therefor without the payment of the special tax. They averred that the levy of the tax by the police jury, and all. other ordinances, resolutions, and proceedings relating thereto, were illegal, null, and void. The reasons assigned for so charging were;
(1)That the petition of taxpayers presented to the police jury was illegal and not in conformity to the requirements of law, and particularly Act No. 35 of 1886, in that it was not signed by the requisite number of the property tax payers; further, that it did not designate the years or time in which said proposed special tax should be levied or collected, or specify the time when the period of ten years should begin, or provide the time-within which work on the proposed line of railway should begin or be completed; and, further, that the railroad company named as the beneficiary of the tax was not a “railroad company or corporation organized under the laws of the state of Louisiana,” and had no legal existence whatever.
(2) That the ordinance ordering the election did not order, an election in favor of the railroad company named in the petition asking for the same, and therefore there was no legal petition asking for the election as ordered; that the police jury had no authority to-order an election to grant aid to the Alexandria, Junction City & Shreveport Railroad Company, for the reason that the said railroad company was not a company or corporation organized under the laws of the state of Louisiana, and its pretended charter was not adopted, recorded, filed, published, or registered as required by law, with the proper registry of subscription of stock, and its pretended incorporators were all nonresidents, and the said pretended company was without any assets or credit whatever, and the same was never authorized to begin business in this state; that it was conceived and designed merely in the interest of the Arkansas Southern Railroad Company, also a foreign corporation, which has never been authorized to do business in this state, and the pretended stockholders and officers were the same in both of the aforesaid pretended corporations; that the line of road described in the ordinance of the police jury, and the point to which the road should be completed before payment of the taxes, is different from that named in the petition, and the action of the police jury in ordering or -changing the same was illegal, null, and void.
(3) That a majority in number and value of the taxxjayers did not vote in favor of the said special tax, and the promulgation of the result of said election, and the action of the police jury declaring the same carried, were *156 illegal;, and, besides, there was no election held, voting a tax to the Alexandria, Junction ■City & Shreveport Railroad Company.
(4) That if it should be held that the special tax was legally voted to the Alexandria, Junction City & Shreveport Railroad Company, and it was a “railroad company or corporation organized under the laws of this state,” the said special tax was not earned, on account of the failure of the said Alexandria, Junction City & Shreveport Railroad Company to comply with the conditions of said ordinance adopted on December 16, 1897, in not actively beginning the construction of the said railroad within six months after said special tax was voted, and the result of said election promulgated, and failing to complete the same and have it in operation to the town of Winnfield, in said parish, as provided in said ordinance, within three years from said date.
(5) That in the event it should be held that the tax was legally voted in favor of the Alexandria, Junction City & Shreveport Railroad Company, the Arkansas Southern Railroad Company has no legal right to said tax, for the reason that the rights of the former company, if any ever existed, were not transferred or assigned to the latter.
(6) That none of the provisions contained in sections 4 and 7 of the ordinance adopted on the 16th of December, 1897, were complied with by either of the aforesaid pretended railroad companies within the time named in said ordinance within which either to begin the construction or to complete the same, and the ordinance adopted on July 10, 1900, by the police jury, extending the time, was illegal, null, and void; that if the police jury had the power and authority to extend the time (but which is denied), the terms and conditions upon which the extension was granted have not been complied with by the Arkansas Southern Railroad Company.
The plaintiffs — all, with the exception of three or four — have paid the special tax levied against them, but under protest, while the other four have not paid it at all.
Plaintiffs prayed for judgment annulling and setting aside all of the acts and ordinances attacked, and all of the ordinances of the police jury .ordering the election, granting the. extension of time for the completion of the said road and for earning of the said special tax, and also the ordinance levying and ordering the collection of the said special tax on the assessment rolls for the years 1901, and nine ensuing years thereafter, and decreeing said special tax to be illegal, null, and void, for the reasons above set forth. They prayed for judgment in solido against the said defendants for costs, and for all necessary orders, and full equitable and general relief.
Defendant railroad company pleaded the prescription of three months in bar of plaintiffs’ action, and also pleaded estoppel; the latter plea based on the ground that “said tax was voted, and the result of the election promulgated, and all the ordinances of the police jury, including the ordinance extending the time within which said railroad should be completed to the town of Winnfield, were published, and none of the plaintiffs made any objection or opposition thereto, but acquiesced in the same, and stood willingly by until this defendant had built its railroad at a large expense on the faith of said special election, and waived its exemption from taxation, as required by the Constitution and laws of the state, on the faith of said taxes and ordinances, and the acquiescence of plaintiffs therein, and that plaintiffs and their property were greatly benefited and enriched by the building of defendant’s road, and that they are now estopped from denying and repudiating their obligations to pay said special tax to this defendant.”
The exception and plea were referred to the merits.
The defendant answered, pleading first the general denial. Further answering, it averred that the Alexandria, Junction City & Shreveport Railroad was regulated and duly organized and chartered under the laws of Louisiana for the purpose of building a railroad from Junction City, via Ruston, to the town of Winnfield. It then set out the various steps taken in relation to the tax of five mills referred to in plaintiffs’ petition, and averred the legality and validity of each step taken. It averred that the Alexandria, Junction City & Shreveport Railroad Company within the time specified did commence the construction of the road from Junction City southward, and continued, the same until the 10th of March, 1899, when that company *158 consolidated with the Arkansas Southern Railroad by articles of consolidation, copies ■of which were annexed to the answer, whereby all the rights, property, privileges, actions, and franchises of the first-named company were granted, conveyed, and assigned -to the defendant and the Arkansas Southern Railroad Company; that after the IOth of March defendant continued the construction ■of the railroad, without avoidable or unnecessary delay, until the same was completed and in operation to the town of Winnfield. It averred that plaintiffs took part in the election, and many of them voted for the tax. It averred that in the year 1899 certain taxpayers of the parish of Winn (other than plaintiffs) brought suit to annul the tax, and their suit was dismissed and their demand rejected by the district court, and no appeal was taken; that plaintiffs, though not joining in that suit, acquiesced in the result. It then set out the action of the police jury extending the time within which the work should be completed, its own waiver of exemption from taxation, and its execution of the bond required by the police jury.
It averred that it was prevented from completing the road into the town of Winnfield within the time specified by unprecedented rains which fell in the year 1900, and delaybd and postponed its work; that, notwithstanding these floods, it pushed forward the work of construction as rapidly as possible, and laid its steel rails and ran its locomotive across the main street of Winnfield, within a few blocks of the courthouse, on the 19th day ■of April, 1901 — before the expiration of the extension of the time granted by the police jury. It averred that it constructed the road on the faith of the contract with the taxpayers of Winn parish, including plaintiffs, who took no steps to forfeit said contract and the special tax thereunder until long after the respondent had expended its money and completed said road, to the immense advantage and benefit of every taxpayer and property holder in the parish. It averred that it not only expended its own means, but induced •others to loan and advance money on the faith of said special tax, and that the time limited was no essential part of said contract, but a mere condition subsequent, which could only work a forfeiture if invoked prior to the performance of the work. It averred the police jury had the authority and legal right to grant an extension of time, and its ordinance to that effect was valid and binding; but, in the event it should be held that the police jury had not such power, it averred alternatively that no extension of time was necessary, and that the taxpayers and police jury permitted the grantee to carry said work forward and complete the same, even after the expiration of tbe time limit, without objection, notice, or the commencement of proceedings to forfeit said tax, the same was valid and binding, and was earned by respondent, and plaintiffs were conclusively es-topped, in law, equity, and conscience, from contesting the validity of the tax, or refusing to pay the same. It reiterated its plea of estoppel, and prayed for the rejection of plaintiffs’ demand and for general relief. The district court sustained the plea of prescription against all the grounds of attack against the legality of the election of February 1, 1898, which was promulgated on February 7, 1898. It sustained the plea of estoppel against the other grounds set up for annulling the tax, and plaintiffs appealed.
Opinion.
The district court did not err in sustaining defendant’s plea of prescription against all attacks against the legality of the election of February 1, 1898, which was promulgated on February 7, 1898.
The plaintiffs in this case were duly notified by the advertisement made of the proposed election, and of the result of the same by public proclamation. They were aware that, unless opposition was made to the same within the period fixed by law for doing so, the company in whose favor the tax was voted, would be justified in supposing that, if there were" in fact any ground of complaint, the parties in interest had waived the same, as they had the right to'do, as this court declared in Gray v. Bourgeois, 107 La. 671, 32 South. 42. They were not justified in holding their grounds of complaint in reserve until after the company had expended large amounts of money, and completed the road, acting on the faith of the election and the acquiescence of the property tax payers therein. This case falls under the operation of the legal principles announced by this court in Guillory v. Railroad Co., 104 La. 11, 28 South. *160 899; Taxpayers v. Tax Collector, 49 La. Ann. 1039, 22 South. 311; Taxpayers v. Police Jury, 52 La. Ann. 465, 27 South. 102; State v. Perrioux, 107 La. 601, 31 South. 1016; Gray v. Bourgeois, 107 La. 671, 32 South. 42.
The objection urged that the ordinance of the police jury ordering the election did not .order an election in favor of the railroad company named, in the petition, asking for the same, and therefore there was no legal petition asking for the election as ordered, is based upon the fact that, in the petition asking for the election, the company in whose favor the tax was proposed to be voted was designated as the “Shreveport, Junction City & Alexandria Railroad,” whereas in all proceedings taken upon the petition it is referred to as the “Alexandria, Junction City & Shreveport Railroad.”
It is obvious that the mistake in the names as given in the petition of taxpayers was a mere clerical error, which was well understood by all parties concerned, and was immediately corrected. It is not pretended that there is any corporation by the name of the “Shreveport, Junction City & Alexandria Railroad Company,” or that any Company other than the Alexandria, Junction City & Shreveport Railroad Company, claiming the benefit of the tax through the Arkansas Southern Railroad Company (the company resulting from the consolidation with another company of that name), is demanding the tax, or that there is any possibility of any such claim being hereafter made by another company. The identity, in fact, of the company in whose favor the tax was voted, with that referred to in the petition of taxpayers, is undoubted. Article 432 of the Civil Code declares that “corporations must not only be authorized by the Legislature or established according to law, but a name must be given to them; and it is in that name that they must sue or be sued, and do all their legal acts, although a slight alteration in this name be not important.”
Objections are urged that the Alexandria, Junction City & Shreveport Railroad Compa- ■ ny and the Southern Railway Company are corporations not legally organized and existing, and that there was no assignment by the former company to the latter of its right to receive the tax.
That both corporations were de facto corporations, existing sufficiently to construct, equip, and put into operation the road which the taxpayers desired to have made, is beyond dispute. The building of that road was the object sought to be attained. All that the taxpayers were legally interested in was that the object should be attained, and that on payment of their tax they should be protected against a second payment. The particular company which should build the road was to the taxpayers a matter of no moment. The assignment of the tax by the Alexandria, Junction City & Shreveport Railroad Company to the Arkansas Southern Railway Company is established by the record. An assignment to another company was contemplated by the taxpayers themselves, and it was authorized to be made by law. See Act No. 35 of 1886, § 7.
Plaintiffs are not warranted in setting up these particular objections collaterally. They will be fully protected from danger by the judgment which will be rendered in this case. As said in Viguerie v. Hall, 107 La. 775, 776, 31 South. 1019, objections of this character can be only sustained when it is shown that the parties making them may be injured by not urging them. It is maintained by plaintiffs that the five-mill tax was not earned, for the reason that the road was not completed within the period fixed by the ordinance calling the election, and that the police jury was without authority to have granted, as it did, an extension of time to the Arkansas Southern Railway Company; also that the petition of taxpayers was not sufficiently specific as to the subject-matters to be submitted to the test of a vote. We think it was sufficiently explicit, under the law. If it was not so, those finding fault on that ground had ample time, opportunity, and remedy to set up the objection. The taxpayers, by their vote, seem to have been satisfied on that score.
It was competent for the taxpayers in their petition “to specify the time when the period of ten years should begin, or provide the time within which work should be completed,” but there was nothing in the statutes making it obligatory upon them to do so. They believed that their interests were sufficiently protected by declaring that the taxes should be levied and collected when eaid railroad should be completed or constructed. *162 The taxpayers were protected hy the law itself (section 7, Act No. 35, p. 46, of 1886), by declaring that no tax should be paid until the railway in favor of which the same shall have been voted shall be completed and in operation to such point as may be specified in the proposition set forth in the petition of taxpayers required by the statute.
Plaintiffs contend, with some inconsistency, that the order of election was illegal, in that, beyond the petition of the taxpayers, it provided a period within which the work should be completed, while they insist that the company forfeited its right to the tax by not completing the work within the time so fixed by the police jury.
The second section of the act referred to declared that the petition of taxpayers shall designate the form of ballots to be used at the election for and against such proposition. This requirement seems to have been complied with, and the ballots so provided for make no mention whatever as to the time within which the work was to be either begun or completed.
The limitation as to the time in which the work was to be completed was made by the police jury, and not by the taxpayers in their petition, and that particular matter does not seem to have been voted upon by the taxpayers. In dealing with this matter, we must again notice that police juries occupy a different position relatively to the taxes authorized to be levied by them under special consent of the taxpayers, under article 270 of the Constitution of 1898, from what they occupy towards those which they are authorized to levy by consent of the taxpayer under article 232 of the same instrument.
The taxes raised under the latter article are to go into the parish treasury strictly as “parish taxes,” for administration by the police jury under their general legislative powers, limited only by the fact that they are to be applied, under that administration, to specified purposes. The consent of the taxpayers to the tax is simply to extend the rate of taxation to special matters falling already under their jurisdiction, while the taxes consented to by the taxpayers under article 270 are as to matters dehors their jurisdiction as to administration in which they have really no interest, and serve exclusively as the instrumentality or agency through which the will of the taxpayers is made manifest and is enforced.
When the taxes are levied and applied under article 270 of the Constitution, the taxpayers, and not the police jury, speak. The taxpayers speak for themselves. The police jury is the mere mouthpiece. The liberty of the police jury in -reference to the taxes to be levied under article 270 is more circumscribed and restricted than it is in reference to those to be levied under article 232. The police jury is not authorized, under article 270 of the Constitution, to submit to a vote of the taxpayers of a parish the levying of a tax upon terms and conditions fixed by itself. The terms and conditions must he fixed by the taxpayers themselves. The police jury in the present instance declared in its ordinance that, if the railroad company did not complete its road within three years, it should not earn the tax. We do not think it was warranted in thus imposing a heavier liability upon it than the taxpayers had imposed upon it.
The lawmakers and the taxpayers themselves considered there was sufficient protection to the latter by declaring that the tax should not be levied or paid over until the-road was completed. Both evidently looked to the possibility of noncompletion at a given-time, and provided as a penalty not the forfeiture of the tax, but the postponement of its levy and payment until the company should have complied with its engagement: ,
The seventh section of the ordinance directs that the work shall be commenced and completed within a certain designated time, but does not declare — even if the police jury had the power so to declare — that the commencement and completion of the work shall be conditions precedent to the earning of the tax; nor does that section declare the failure so to do shall operate ipso facto as a forfeiture. If this section be regarded, as one affixing a penalty or forfeiture for noneompletion of the road, it was a penalty imposed by the police jury itself, and not by the taxpayers; and pretermitting a discussion as to whether it would have been enforceable, had the extension not been granted, we think the police jury had the right to repeal the section or to modify it.
If the police jury was sufficiently the agent of the taxpayers to add conditions and penal *164 ties to the contract which they themselves had not attached, it was sufficiently so, also, by anticipation, to waive the penalty.
The aid voted to be extended to the company was not a mere gratuity. The parties stood related to each other by an engagement in the nature of a contract. The company was to build the road through the parish to Winnfield in consideration or part consideration of the aid. The aid was to he extended iu consideration of the building of the road, with its incidental advantages. It was to the interest of both parties that the road should be constructed. The extension, therefore,,was not a pure gratuity.
We are of the opinion that if the plaintiffs, as taxpayers interested in the subject-matter, considered that the extension by the police jury was unauthorized, they should have taken steps in the way of a repudiation or denial of its authority in the premises. They had ample opportunity to do so. They should not have stood in the background until the work was completed, and then complain, when a restitutio in integrum is impossible. The company cannot be placed back to tbe position it had, while the plaintiffs now and hereafter will forcedly get all the advantages of its completed work.
Article 1901 of the Civil Code, under the heading of the “Effect of Obligation,” closes with the words that agreements legally entered into must be performed in good faith. We think that good faith requires the plaintiffs to pay the tax which they seek to' avoid, and that the judgment of the district court sustaining the plea of estoppel was well grounded. We find no error in the judgment appealed from, and it is hereby affirmed.